UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:14-cv-01399 |
| | ) | |
| v. | ) | JUDGE SHARP |
| | ) | MAGISTRATE JUDGE KNOWLES |
| TENNESSEE DEPARTMENT OF | ) | |
| REVENUE and RICHARD ROBERTS, | ) | |
| Commissioner of Revenue of | ) | |
| the State of Tennessee, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff BNSF Railway Company ("Plaintiff" or BNSF") has brought this action against Tennessee Department of Revenue, and Richard Roberts, Commissioner of Revenue of the State of Tennessee (collectively the "Defendants" or the "Commissioner") as a result of the recently enacted Tennessee Transportation Fuel Equity Act (the "Act"), which allegedly violates Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501(b)(4). This matter is presently before the Court on *Plaintiff's Motion for a Preliminary Injunction* (Docket Entry No. 11), to which Defendants have filed a brief in opposition (Docket Entry No. 21), and Plaintiff filed a reply (Docket Entry No. 28). Plaintiff seeks injunctive relief enjoining Defendants, their officers, agents, and employees, and all those acting in concert or participation with them, from assessing, levying or collecting taxes imposed on BNSF's railway fuel by the Tennessee Transportation Fuel Equity Act.

On August 29, 2014, the Court conducted a hearing on the motion. Having reviewed all the papers filed in support of, and in opposition to, Plaintiff's motion, and having considered the oral arguments of counsel, the Court hereby denies Plaintiff's motion for preliminary injunction.

## I. FACTUAL BACKGROUND

*Parties*

According to the Complaint, BNSF is a Delaware corporation with its principal place of business located in Ft. Worth, Texas. BNSF is engaged in interstate commerce as a common carrier by railroad. The Tennessee Department of Revenue is the department of the State of Tennessee charged with the responsibility to administer and collect the taxes challenged in such instance. Richard Roberts is the Department's Commissioner and exercises general supervision over administration of the assessment and collection of non-property taxes in Tennessee. (Docket Entry No. 1, Complaint at ¶¶ 5-7).

*Background*

Since 1941, Tennessee has imposed a cents-per-gallon "excise" tax on motor vehicle fuel, which is dedicated to the construction and maintenance of highways in Tennessee. *See* §§ 2,3 of Chapter 73, Public Acts of 1941. This tax has, from its inception, been limited to fuel consumed "on the public highways." See *id.* § 1(b). Such taxes are often described as "motor fuel" or "highway user" taxes. The current "Highway User Fuel Tax" is codified at Tenn. Code Ann. § 67-3-1201, *et seq.* It includes the "Gasoline tax" of 20¢ per gallon imposed by Tenn. Code Ann. § 67-3-201, and the "Diesel tax" of 17¢ per gallon imposed by Tenn. Code Ann. § 67-3-202. *See* Tenn. Code Ann. § 67-3-1201(2) & (4).

Prior to July 1, 2014, the purchase and use of railroad diesel fuel was subject to the Tennessee sales and use tax imposed by Chapter 6 of Title 67 of the Tennessee Code. On August 27, 2013, this Court issued an injunctive and declaratory order that the imposition of Tennessee sales and use taxes on the diesel fuel of the Illinois Central Railroad Company violated Section 306. *See Illinois Central Railroad Company v. Tennessee Dept. of Revenue*,

969 F. Supp. 2d 892 (M.D. Tenn. 2013).[1] In reaction to the Order, Plaintiff claims that on May 13, 2014, Tennessee Enacted the Transportation Fuel Equity Act, as part of Public Chapter 908 of the Public Acts of 2014. The Act became effective on July 1, 2014. Section 11 of Public Chapter 908 repeals the sales and use tax on railroad diesel fuel, and instead imposes a tax of 17¢ per gallon on diesel fuel used by railroads in the State.[2] *See* (Docket Entry No. 1 at ¶¶ 8-10).

The Act exempts the water ways from its coverage. Water carriers and railroads use fuel dyed in accordance with federal regulation to power their marine vessels and locomotives. *See* (*Id.* at 12-13). Plaintiff contends that although the Act purports to impose a tax on "commercial carriers," in reality railroads will be the only commercial carriers paying tax on dyed diesel fuel. And furthermore, Plaintiff continues, although fuel used by interstate motor carriers is subject to a diesel tax under T.C.A. § 67-3-202, as amplified by the Highway User Fuel Tax, T.C.A. § 67-3-1201 *et seq.*, the motor carriers, unlike railroads, do not use dyed fuel but instead use clear diesel fuel, which is taxed in order to support and maintain the highways used by the motor carriers. (*Id.* at ¶¶ 12-15).

## II. ANALYSIS

**A. Legal Standard for Preliminary Injunction**

For a party seeking injunctive relief under the 4-R Act, "a railroad need only demonstrate that there is 'reasonable cause' to believe a violation of the 4-R Act has occurred or is about to occur." *CSX Transp., Inc. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir.

---

[1] This case is currently pending on appeal in the Sixth Circuit Court of Appeals, No. 13-6348.

[2] BNSF's first payment of this tax is due no later than October 20, 2014. (*Id.* at 11). Tennessee law imposes penalty and interest on delinquent diesel fuel taxes, and according to Plaintiff, it could suffer penalties and interest unless the collection of the taxes is enjoined, citing Tenn. Code Ann. § 67-3-1208(b) & (c). (Docket Entry No. 12 at 10).

1992). A mere "possibility" of a violation of the 4-R Act is not sufficient. *Tennessee State Bd. of Equalization*, 964 F.2d at 555.

## B. Discussion

At this juncture, the Court is not deciding the merits of Plaintiff's case, but rather the Court is called upon to determine whether Plaintiff has shown reasonable cause to believe that Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501(b)(4) has been violated, or is about to be violated.

Plaintiff ultimately seeks to enjoin Defendants from assessing, levying or collecting taxes imposed on its fuel by the Tennessee Transportation Fuel Equity Act. As part of its claim, Plaintiff contends such an action would violate Section 306.

Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 ("Section 306" or the "4-R Act"), 49 U.S.C. § 11501(b)(4), prohibits state and local governments from discriminating against railroads with respect to taxation. The 4-R Act establishes that "[t]he following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or Authority acting for a State or subdivision of a State may not:

> (1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
>
> (2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.
>
> (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
>
> (4) Impose another tax that discriminates against a rail carrier providing

transportation subject to the jurisdiction of the Board under this part."

49 U.S.C. § 11501(b).

Sections 11501(b)(1)-(3) prohibit "the imposition of higher assessment ratios or tax rates upon rail transportation property than upon 'other commercial and industrial property.' " *Dep't of Revenue of Or. v. ACF Indus., Inc.,* 510 U.S. 332, 336, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). Section 11501(b)(4) of the 4-R Act is broader and prohibits the imposition of "another tax that discriminates against a rail carrier providing transportation." *Id.* This case is brought pursuant to the fourth provision.

According to Plaintiff, "[f]ollowing this Court's injunction on a sales tax on railroad diesel fuel, the Tennessee General Assembly improvidently reacted by passing a flawed and ill-conceived state statute that violates Section 306(1)(d) under several, equally applicable modes of analysis." (Docket Entry No. 12 at 10). Citing *ACF*, 510 U.S. at 346-347, Plaintiff argues the following:

> One type of taxation which the courts have invariably prohibited under Section 306(1)(d) is a tax which "targets" or "singles out" railroads for discriminatory treatment. As recognized by the United States Supreme Court, Section 306(1)(d) would be applicable where a state has "singled out railroad property for discriminatory treatment," such as the case where "the railroads – either alone or as part of some isolated and targeted group – are the only commercial entities subject to an ad valorem property tax."
>
> \*\*\*
>
> But the Tennessee Transportation Fuel Equity Act is a classic example of a "targeting" or singling out" tax. Railroads are the only users of dyed diesel fuel – that is, diesel fuel used for non-highway purposes – subject to the new Act. At trial, BNSF will introduce the legislative history of the new Act, showing that the proposed legislation at one time included commercial water carriers, but they were excluded prior to the passage of the new Act. That leaves railroads as the only taxed industry under the new Act for non-highway use.
>
> In its attempt to resume discriminatory taxation previously enjoined by this Court, Tennessee has tried to pound a round peg into a square hole. Tennessee has made

the railroads the only taxpayer in Tennessee subject to tax under Tenn. Code Ann. § 67-3-202 on their nonhighway use of dyed diesel fuel. This attempt to impose a discriminatory tax does not pass muster under Section 306(1)(d).

(*Id.* at 11 and 13).

Defendants claim, nevertheless, that "the adoption of the [Act] is not the type of action that impelled Congress to pass the 4-R Act." (Docket Entry No. 21 at 2). Defendants further argue,

> BNSF, and similarly-positioned railroads, are here attempting to be the only non-governmental entities in Tennessee that pay no tax on the purchase or consumption of fuel used for transportation. . . The Act cannot be evaluated in a vacuum. It is an "equity" act because it was passed with the express purpose of eliminating the difference in treatment between railroads and trucks that the railroad complained about and this Court identified in *Illinois Central R.R. Co. v. Tennessee Dep't of Revenue*, 969 F.Supp.2d 892 (M.D. Tenn. 2013), appeal pending, No. 13-6348 (6th Cir.). It is designed to conform to the law as expressed in that decision. It treats railroads and trucks, their primary competitors, exactly the same way.
>
> ***
>
> BNSF fails to acknowledge critical facts. The Act imposes the same per-gallon tax on railroads that is imposed on motor carriers and, as with motor carriers, measures the amount of that tax in terms of gallons of fuel consumed in Tennessee. The Act provides a credit to railroads for sales taxes paid on purchases in other states that renders the tax on them lower than that on their competitors. The only difference between clear diesel fuel and dyed diesel fuel is color. A state's allocation of proceeds from a tax has no bearing on the question of tax discrimination. . . Railroads simply are not objects of discrimination as to their consumption of fuel in Tennessee, and BNSF is entitled to no relief in this case.

(*Id.* at 1-3).[3]

---

[3] According to Defendant, "Tennessee, along with the other 47 contiguous states and bordering Canadian provinces, is a party to the International Fuel Tax Agreement ("IFTA"), the purposes of which is to simplify the collection and reporting of taxes on motor fuel used by motor carriers operating in more than one jurisdiction. State participation in IFTA is essentially mandated by federal legislation. *See* 49 U.S.C. § 31701 through -07. IFTA requires that the fuel use tax imposed by member jurisdictions be measured by the consumption of fuel by a motor vehicle. *See* 49 U.S.C. § 31701(2). Motor carriers register and file tax returns in a single base jurisdiction, which, in turn, is responsible for distributing the tax proceeds to other jurisdictions in which the carrier operates. Motor carriers receive in each jurisdiction a credit or refund for taxes paid on fuel used outside the jurisdiction where it was purchased. There is no similar

Before the Court can assess whether there is "reasonable cause to believe" that the Act is discriminatory, it must first determine the appropriate class for comparison. *CSX Transp., Inc. v. Alabama Dep't of Revenue*, __ U.S. __ , 131 S.Ct. 1101, 1107 (2011) ("*CSX*").

Under the first three subsections of the statute that deal exclusively with property taxes, Congress specifically provided a comparison class comprised of "other commercial and industrial property." 49 U.S.C. § 11501(b)(1–3). It did not provide such a comparison class for the catchall provision. *See* 49 U.S.C. § 11501(b)(4). The proper approach toward defining the appropriate class for comparison under subsection (b)(4) has divided the circuits,[4] and the Supreme Court's most recent decision in this area, *CSX,* declined to resolve the split. 131 S.Ct. at 1107 n. 5; *see id.* at 1115, 1118 n. 3 (Thomas, J., dissenting) (noting the division of authority); *Norfolk S. Ry. Co. v. Alabama Dep't of Rev.,* 550 F.3d 1306, 1308 n. 3 (11th Cir. 2008) (collecting cases), abrogated on other grounds by *CSX,* 131 S.Ct. 1101.

The Commissioner contends the proper comparison class is the class of other commercial and industrial taxpayers. (Docket Entry No. 21 at 6). In its Reply brief, Plaintiff submits that

---

multi-state agreement with respect to fuel purchased, used, or consumed by railroads." *See* (Docket Entry No. 21 at 4, fn 4).

[4] Courts are split on the issue of the proper "comparison class." *Compare CSX Transp., Inc. v. Ala. Dep't of Revenue,* Civil Action No. 2:08-cv-00655-UWC, slip op. at 6-7 & n.3 (N.D.Ala. July 8, 2008) (applying "competitive mode" comparison class, consisting of railroad's "direct competitors"), *and Union Pac. R.R. v. Minn. Dep't of Revenue,* 507 F.3d 693, 695 (8th Cir. 2007) (same), *and Ka. City S. Ry. v. Bridges,* No. 04-2547, 2007 U.S. Dist. LEXIS 23477, at *21-22 (W.D.La. Mar. 30, 2007) (same), *and Burlington N. R.R. v. Comm'r of Revenue,* 509 N.W.2d 551, 553 (Minn. 1993) (same), *with Burlington N. Santa Fe Ry. v. Monroe,* Civil Action No. 97-D-1754-N, slip op. at 21 (M.D.Ala. Aug. 10, 1998) (applying comparison class of other "commercial and industrial taxpayers"), *and Atchison, Topeka & Santa Fe Ry. v. Arizona,* 78 F.3d 438, 441 (9th Cir. 1996), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996) (same), *and Ka. City S. R.R. v. McNamara,* 817 F.2d 368, 375, 376 n. 15 (5th Cir. 1987) (same), *and Ala. Great S. R.R. v. Eagerton,* 541 F.Supp. 1084, 1086 (M.D.Ala. 1982) (same). The Supreme Court in dicta has applied the "other commercial and industrial taxpayers" category to challenges to state taxes under section (b)(4). *See Dep't of Rev. v. ACF Indus., Inc.,* 510 U.S. 332, 335, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994).

"the tax which the State attempts to impose would fail under any analysis and regardless of the comparison class used."[5] (Docket Entry No. 28 at 3). Plaintiff further argues,

> To be sure, utilizing the class of other commercial and industrial taxpayers would result in a finding of discrimination under Section 11501(b)(4). Other commercial and industrial taxpayers, to the extent that they use diesel fuel, pay tax on that diesel fuel only when it is used for on-highway purposes. BNSF repeats that the tax challenged here singles out railroads because only railroads would pay the tax on diesel fuel not used on the highway. Clearly, this is a tax that, in the words of the Seventh Circuit, is "discriminatory" under Section 11501(b)(4) because "it imposes a proportionately heavier tax on railroading than on other activities, even if the taxing authority might be able to show that the activity imposes a disproportionate burden on public services." *See Burlington Northern Railroad Co. v. City of Superior*, *supra*, 932 F.2d at 1187.
>
> Looking alternatively at the comparison class of "competitive modes of transportation," the tax fails because the General Assembly refused to impose the same tax on water carriers, which is the other principal user of non-highway use diesel fuel in Tennessee. The exclusion of water carriers from the Act is accomplished by the sophistry of statutorily defining "commercial carrier" in a way that excludes water carriers. *See* Brief in Support, pp. 3-4. It is extraordinarily pretextual to facially impose a tax on "commercial carriers," but then pretend that water carriers are not such companies.
>
> ***
>
> In attempting to support the "reasonable distinctions" between railroads and motor carriers [sic], the Defendants' Response theorizes that "it is virtually impossible for fuel taxes on water carriers to be measured by consumption." (p. 17). There is no substantiation for this theory, nor do the defendants explain why it is any easier for interstate railroads to measure consumption in Tennessee than it is for interstate water carriers. The studies relied upon by the defendants further cite differences between water and rail networks, and the efficiencies of different modes of commercial transportation, and even the alleged impact on public safety. (*See* Defendants' Response, pp. 18-19). But none of these alleged differences speak to the issues here, and certainly do not constitute a "sufficient justification" for the exemption of water carriers from the new Act now applicable to railroads. As the Supreme Court explained in *CSX Transportation, Inc. v.*

---

[5] In Plaintiff's initial brief in support of the motion, it takes the approach that the Court should use "other commercial and industrial" taxpayers as the comparative class. Specifically, Plaintiff states, "when the challenged tax is not one of general applicability, <u>such as in this case</u> where railroads are not taxed the same as other commercial and industrial taxpayers, the courts look to 'other commercial and industrial taxpayers' as the comparative class." (Docket Entry No. 12 at 4, emphasis added).

> *Alabama Dept. of Revenue*, 131 S.Ct. 1101 (2011), the state must offer "a sufficient justification" for declining to exempt railroads from a tax exempting its competitor. *See* 131 S.Ct. at 1109, n. 8. Since a competitor has been exempted from the tax and no attempt has been made to offer a "sufficient justification," a preliminary injunction should be entered.

(*Id.* at 3-6).

Defendants counter that "[w]hile it is true that water carriers, which are at best minor competitors, are exempt from the Act, they pay sales and use tax on their (dyed) diesel fuel purchases in Tennessee." (Docket Entry No. 21 at 7). And because of the credit railroads receive paid on out-of-state fuel consumptions, "it is likely that the level of sales and use tax paid by water carriers will be higher than the level of diesel tax paid by railroads." (*Id.*). Additionally, Defendants argue that when making an assessment under the commercial and industrial comparison class, "railroads pay a lower level of tax on fuel than anyone else in the class that uses fuel for transportation purposes." (*Id.* at 7-8).

The Court has conducted a comprehensive review of the different approaches available to it, and concludes the appropriate comparison class is that of other commercial and industrial taxpayers.[6] Having decided the appropriate comparison class, the Court must now determine whether the sales and use taxes for diesel fuel assessed against the railroad is discriminatory.

The "statute does not define 'discriminates,' and so [courts should] look [] to the ordinary meaning of the word." *CSX,* 131 S.Ct. at 1108. Discrimination, the Court has said, is the "failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." *Id.* (quoting Black's Law Dictionary 534 (9th ed. 2009)). *CSX* did not offer further guidance on what constitutes discrimination in the present context. In *dicta,* however, the Court observed that "[w]hether the railroad will prevail—that is, whether it can

---

[6] Since the Court has opted not to use the competitive mode comparison class, it need not conduct an analysis on the exclusion of water ways at this stage in the litigation.

prove the alleged discrimination—depends on whether the State offers a sufficient justification for declining to provide the exemption at issue to rail carriers." *Id.* at 1109 n. 8.

A two-step inquiry is used to evaluate a claim of discrimination in violation of § 11501(b)(4). *See CSX,* 131 S.Ct. at 1109 n. 8. The plaintiff has the initial burden to establish a prima facie case of discriminatory tax treatment. If the plaintiff does so, the burden shifts to the defendant taxing authority to establish that the differential tax treatment is justified and does not discriminate against the railroad. *Id.* If the defendant cannot meet its burden, the tax treatment violates § 11501(b)(4). *Id.*

When analyzing this case under the comparative class of "other commercial and industrial" taxpayers, Plaintiff argues that this new tax must fail under Section 306(1)(d). (Docket Entry No. 12 at 14). "This is because although railroads are no longer subject to a sales tax that is generally applicable to all other commercial and industrial taxpayers in Tennessee (as was the case in Illinois Central Railroad Co. v Tennessee Dep't of Revenue), railroads now are subject to a tax on their dyed diesel fuel used off-highway – a tax that no other commercial and industrial taxpayer pays." (*Id.*).

Defendant urges that the Act is unlike the kind of taxes that are challenged in targeting cases. The Act "determines the level of tax on railroads when they engage in the activity of consuming fuel in Tennessee, an activity engaged in by trucks, barges, and every other person who operates a vehicle for transportation purposes in Tennessee, all of whom pay state tax on the purchase or use of that fuel." (Docket Entry No. 21 at 5). But because of the credit railroads receive for out-of-state purchases, "the tax imposed . . . under the Act is lower than imposed on every other purchaser and user." (*Id.* at 6).

When using the comparison class of "other commercial and industrial" and considering

whether railroads have a heavier tax burden than all other taxpayers in the class, Plaintiff has failed to establish a competitive disadvantage. The Supreme Court has expressly rejected any notion that railroads are entitled under subsection (b)(4) to "most-favored-taxpayer" status. *See CSX,* 131 S.Ct. at 1109, n.8. The idea that the railroads would essentially be free and clear of any state tax on diesel fuel, when all "other commercial and industrial" taxpayers are obligated to pay such tax, would certainly teeter on a "most-favorable-taxpayer" status. Moreover, although other commercial and industrial taxpayers are not subject to this particular Act, Plaintiff has failed to persuade the Court at this juncture that the imposition of the tax discriminates against rail carriers – considering that ultimately all taxpayers pay 17¢ per gallon on diesel fuel consumed in Tennessee. Consequently, based on the evidence in the record at this stage in the litigation, there is not reasonable cause to believe a violation of the 4-R Act has occurred – and therefore, does not support the imposition of a preliminary injunction.

### III. CONCLUSION

For all of the reasons stated, *Plaintiff's Motion for a Preliminary Injunction* (Docket Entry No. 11) is hereby denied. The Court will return this matter to the Magistrate Judge to conduct all further case management proceedings necessary to prepare this case for trial on the merits.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE